DECISION
Before this Court is the appeal of Paul and Donna Nicholson ("Nicholsons") of a decision by the Barrington Zoning Board of Review, sitting in its capacity as Barrington's Planning Board of Appeal ("Board of Appeal"). The Board of Appeal's decision, issued October 23, 2006, overturned a decision of the Barrington Planning Board ("Planning Board") denying the subdivision application of Allen Rock Realty, LLC ("Allen Rock"). The Nicholsons, owners of property abutting the proposed subdivision, filed a timely appeal on November 8, 2006. Jurisdiction is pursuant to G.L. 1956 § 45-23-71(a).
 I Facts and Travel
Allen Rock is the owner of a seven-acre parcel in Barrington, Rhode Island, designated as Lot 83 on the Barrington Tax Assessor's Map 11. The eastern edge of *Page 2 
Allen Rock's lot borders Smith's Cove on the Barrington River. (Ex. 1, map of proposed subdivision). Lots not owned by Allen Rock border the property on its northern, southern, and western edges. Id. Although Allen Rock's lot, which contains a single family home, is mostly landlocked, a driveway owned by Allen Rock runs between two lots on the western side of Allen Rock's property, connecting it to Rumstick Road.Id.; see also Board of Appeal Hearing Transcript ("Tr.") dated 9/21/06 at 40-41. The lots on the property's western side each border Rumstick Road directly and are labeled Lots 82 and 100 on the Tax Assessor's Map 11. (Ex. 1.) The Nicholsons are the owners of Lot 82, located at 314 Rumstick Road in Barrington. Id. Lots 82, 83, and 100 are all zoned in Barrington's R-40 zoning district. (Planning Board Dec. at 1.)
Once a single parcel owned by Norman and Mary McCulloch, the three lots were given their approximate form in May 1963, when the McCullochs received permission from the Planning Board to subdivide their property. On the approved plat map from 1963 ("1963 plat map"), Lots 82 and 100 are labeled, respectively, "Lot 1" and "Lot 2." (Ex. 1, 1963 plat map.) Lot 83, shown as an unplatted area, was designated as "Area X."Id. The 1963 plat map also depicts a 50-foot wide strip of land ("50-foot strip) between Lots 1 and 2. Id. Within the strip, the plat map states: "This area reserved for street purposes; to be constructed and deeded in accordance with the Barrington Platting Regulations when any construction or development is proposed for Area `X.'" Id. The 1963 plat further states: "For purposes of building permit . . . requirements, Lots 1 and 2 shall be considered `corner' lots."Id.
During the process of obtaining approval for the 1963 subdivision, it became apparent that Lots 1 and 2 would not have sufficient frontage to satisfy the Zoning *Page 3 
Ordinance. Norman McCulloch therefore sought relief from the Zoning Board of Review. At a Zoning Board meeting on May 16, 1963, McCulloch explained that the "50 foot [right-of-way] located between the proposed lots would eventually be given to the Town as a road when the entire parcel is made into house lots." (Ex. 2, minutes of Zoning Board meeting dated 5/16/63) The Zoning Board also received evidence that the proposed road, when constructed, would add sufficient frontage to Lots 1 and 2 to comply with the Zoning Ordinance. Id.[1] Recognizing that "no violations would exist" when Area X was platted and the road was built, the Zoning Board voted to grant the requested relief. Id.
In 1986, Mary McCulloch made some minor alterations to the 1963 platting scheme. Principally, a new lot was created consisting of Area X, the 50-foot wide strip from the 1963 plat map, and a portion of Lot 2. (Nicholson's Memo., Ex. E.). The lot created in 1986 is presently Lot 83, owned by Allen Rock. Lot 1 and the rest of Lot 2 currently form Lots 82 and 100, respectively. Id. Allen Rock now seeks to subdivide Lot 83 into three residential lots. To this end, on October 26, 2004, Allen Rock filed a subdivision application with the Planning Board.[2] To provide access to the lots from Rumstick Road, the plan called for building a road between Lots 82 and 100 on the same strip of land that had been proposed for a road in 1963. (Ex. 1.) This strip of land is currently the location of Allen Rock's driveway.
The Nicholsons objected to the proposed subdivision, arguing that the new road would cause their own property and Lot 100 to no longer comply with the setback *Page 4 
requirements of the Zoning Ordinance. The front yard setback requirement in Barrington's R-40 zoning district is 50 feet. Barrington Zoning Ordinance § 185-17.[3] The side yard setback requirement is 30 feet.[4] (Board of Appeal Dec. at 6.) However, on corner lots, both front and side yards must be at least 50 feet in depth. See Barrington Zoning Ordinance § 185-18. According to the Nicholsons, after approval of the new road, Lots 1 and 2 would become corner lots subject to a 50-foot setback requirement. A deck on the southern side of the Nicholson property, in the yard alongside the proposed road, is located within 50 feet of the edge of that lot.[5] (Ex. 1.) Some steps on the northern portion of Lot 100, also on the side nearest the proposed road, are likewise located within 50 feet of the property edge. (Ex. 1; Tr. at 47.) Both lots, the Nicholsons contended, therefore would no longer be in compliance with the Zoning Ordinance.
According to the Nicholsons, because the proposed subdivision would cause their own lot, Lot 82, and Lot 100 (the "adjacent lots") to violate the Zoning Ordinance, the Planning Board had no authority to approve the subdivision. Pursuant to G.L. 1956 § 45-23-60(a)(2), planning authorities reviewing subdivision applications are required to find that "the proposed development is in compliance with the standards and provisions of the municipality's zoning ordinance." Barrington's subdivision regulations similarly require a finding that "the proposed development is in compliance with the standards and *Page 5 
provisions of the Barrington Zoning Ordinance." Barrington Land Development and Subdivision Regulations § 200-36(B).
On April 4, 2006, after receiving an opinion from its legal counsel, the Planning Board voted to deny Allen Rock's subdivision application. (Planning Board Dec. at 1-3.) In its written decision, the Planning Board, agreeing with the Nicholsons, concluded that "the creation of nonconformity on Lots 82 and 100 is not consistent" with the Barrington Zoning Ordinance. Id. at 2. The Planning Board found that if the subdivision were permitted, the two lots would each require a variance from the front yard setback requirement. Id. The decision specified no other basis for denying Allen Rock's subdivision application.
Allen Rock appealed the Planning Board's decision to the Barrington Zoning Board of Review, which also serves as the town's Planning Board of Appeal. A duly noticed hearing on the matter was held on September 21, 2006. In its decision on October 23, 2006, the Board of Appeal reversed the Planning Board's decision, finding that the Planning Board had "overlooked material evidence" concerning the history of the properties at issue. (Board of Appeal Dec. at 7.) According to the Board of Appeal,
 "[a]s a matter of law . . . the abutting properties, are unaffected by the actions of the developers in that whatever structures now located on their property will be considered pre-existing, lawful nonconforming uses such that dimensional variances will not be required if the Allen Rock subdivision is approved. The structures were legal when they were built and they will remain legal. There is nothing in the zoning ordinance or the planning and subdivision regulations which cause these structures or properties to become illegal or nonconforming as a consequence of the creation of the proposed Allen Rock subdivision." Id. *Page 6 
The Board of Appeal further concluded that the Nicholsons are "effectively estopped" from objecting to the proposed subdivision because they were on "actual and constructive notice through their chain of title that the road had been reserved from the original platting in 1963 for future development." Id. at 8.[6] Finally, the Board of Appeal found that, pursuant to § 45-23-60(a)(2), the Planning Board should not have considered whether the subdivision would lead to a lack of compliance with the zoning ordinance on Lots 1 and 2.Id.[7]
The Nicholsons, objecting to the Board of Appeal's decision, filed a timely appeal to this Court on November 8, 2006. See § 45-23-71(a) (permitting an "aggrieved party" to appeal to the superior court within 20 days of the issuance of a decision by a planning board of appeal).
 II Standard of Review
Prior to review by this Court, a zoning board acting as a board of appeal for a planning board may reverse the planning board only after finding the planning board's decision erroneous due to "prejudicial procedural error, clear error, or lack of support by the weight of the evidence in the record." Section 45-23-70(a). This Court's review of board of appeal decisions is authorized by § 45-23-71. Section 45-23-71(c), governing the standard of review, states: *Page 7 
 "The court shall not substitute its judgment for that of the planning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the planning board by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
Judicial review of a board of appeal's decision is not denovo. Section 45-23-71 requires that the Superior Court review the board's decision "utilizing the `traditional judicial review standard that is applied in administrative-agency actions.'" Munroe v. Town of E.Greenwich, 733 A.2d 703, 705 (R.I. 1999) (quoting Kirby v. PlanningBoard of Review of Middletown, 634 A.2d 285, 290 (R.I. 1993)). As such, "the Superior Court does not consider the credibility of witnesses, weigh the evidence, or make its own findings of fact." Id. The Court's review of the record is limited to ascertaining "whether the board's decision rests upon competent evidence." Id. (quoting Kirby,634 A.2d at 290). Legally competent evidence is defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Town of Smithfield v. Churchill Banks Cos.,LLC, 924 A.2d 796, 806 (R.I. 2007) (quoting Foster-Glocester RegionalSchool Committee v. Board of Review, 854 A.2d 1008, 1012 (R.I. 2004). *Page 8 
However, as with administrative agency decisions, determinations of law "are not binding upon [the Court] and may be freely reviewed to determine the relevant law and its applicability to the facts presented in the record." Dep't of Envt'l Mgmt. v. Labor Rels. Bd., 799 A.2d 274,277 (R.I. 2002) (citing Carmody v. R.I. Conflict of InterestComm'n, 509 A.2d 453, 458 (R.I. 1986)). A "dispute involving statutory interpretation is a question of law to which [the Court] appl[ies]de novo review." Rossi v. Employees' Retirement Sys. of the State ofRhode Island, 895 A.2d 106, 110 (R.I. 2006) (citing In re AdvisoryOpinion to the Governor, 732 A.2d 55, 60 (R.I. 1999)).
 III Analysis
The parties disagree on two key issues. First, they dispute the authority of the Planning Board to deny a subdivision application because the subdivision would cause homes on adjacent lots to be out of compliance with the Zoning Ordinance. Second, they disagree on whether the proposed subdivision would, in fact, lead to a lack of compliance with the Zoning Ordinance on adjacent lots. On the first issue, this Court upholds the decision of the Board of Appeal; the Planning Board was required only to take into account whether the property within the proposed subdivision would comply with the Zoning Ordinance. On the second issue, this Court finds that either the proposed subdivision would not create zoning nonconformity on adjacent lots or that those lots would become legally nonconforming by dimension. *Page 9 
 A Required Findings
The Rhode Island Land Development and Subdivision Review Enabling Act of 1992, §§ 45-23-25 through 45-23-74, also known as the "Development Review Act," requires planning authorities to consider certain factors when reviewing subdivision applications. See § 45-23-60 ("Required Findings"). Specifically, pursuant to § 45-23-60(a), planning authorities must:
 "make positive findings on the following standard provisions, as part of the proposed project's record prior to approval:
 (1) The proposed development is consistent with the comprehensive community plan and/or has satisfactorily addressed the issues where there may be inconsistencies;
 (2) The proposed development is in compliance with the standards and provisions of the municipality's zoning ordinance;
 (3) There will be no significant negative environmental impacts from the proposed development as shown on the final plan, with all required conditions for approval;
 (4) The subdivision, as proposed, will not result in the creation of individual lots with any physical constraints to development that building on those lots according to pertinent regulations and building standards would be impracticable. (See definition of Buildable lot). Lots with physical constraints to development may be created only if identified as permanent open space or permanently reserved for a public purpose on the approved, recorded plans; and
 (5) All proposed land developments and all subdivision lots have adequate and permanent physical access to a public street. Lot frontage on a public street without physical access shall not be considered in compliance with this requirement."
The Barrington Land Development and Subdivision Regulations ("Barrington subdivision regulations") contain a set of corresponding factors that the Planning Board *Page 10 
must consider. Most importantly, § 200-36(C), the provision analogous to § 45-23-60(a)(2), requires the Planning Board to make a finding that "[t]he proposed development is in compliance with the standards and provisions of the Barrington Zoning Ordinance."
In construing both § 45-23-609(a)(2) and § 200-36(C), this Court observes that the "rules of statutory construction apply equally to the construction of an ordinance." Pawtucket Transfer Operations, LLC v.City of Pawtucket, 944 A.2d 855, 859 (R.I. 2008) (quoting Mongony v.Bevilacqua, 432 A.2d 661, 663 (R.I. 1981)). Accordingly, the "clear and unambiguous language in an ordinance [is accorded] its plain and ordinary meaning." Id. However, "when the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency, or board, charged with its enforcement is entitled to weight and deference, as long as that construction is not clearly erroneous or unauthorized." Id. (internal citation and footnote omitted); see also Monforte v. Zoning Board of Review of EastProvidence, 93 R.I. 447, 449, 176 A.2d 726, 728 (1962) (zoning board of review entitled to deference because it is "presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance"). It must be remembered, however, that "this Court `will not construe a statute to achieve meaningless or absurd results.'" Tidewater Realty, LLC v. State,942 A.2d 986, 992 (R.I. 2008) (quoting Beaudoin v. Petit, 122 R.I. 469, 476,409 A.2d 536, 540 (1979)).
Allen Rock argues, based on the plain meaning of § 45-23-60(a)(2) and the corresponding Barrington subdivision regulation, that the only relevant question is whether lots within the proposed subdivision would comply with the zoning ordinance. In particular, Allen Rock emphasizes that the only necessary finding is that the "proposed *Page 11 development is in compliance with the standards and provisions of the municipality's zoning ordinance" (emphasis added). According to Allen Rock, it is unambiguous that the term "proposed development" includes only the property slated for development and not surrounding parcels. The Nicholsons urge an alternative interpretation of "proposed development," which is that the phrase refers not to a specific plat of land but to all physical changes that a subdivision would entail, both within a subdivision and beyond its borders.
Based on how the term "proposed development" is used elsewhere in § 45-23-60(a), this Court finds Allen Rock's interpretation to be the most natural.[8] Of particular note is § 45-23-60(a)(3), which requires that "[t]here will be no significant negative environmental impacts from the proposed development as shown on the final plan. . . ." By referring to the "proposed development" as something that can be "shown" on a final plan, this provision implies that "proposed development" refers to a specific parcel of land, namely the proposed subdivision itself. The term "impact" also suggests that "proposed development" is itself a discrete land area consisting of the proposed subdivision. Finally, the requirement in § 45-23-60(a)(5) that "[a]ll proposed land developments and all subdivision lots" have access to a public street reinforces that the phrase "proposed development" refers to a specific plat of land and does not include any off-site changes a subdivision might entail. *Page 12 
Beyond plain meaning, the Planning Board's interpretation of "proposed development" leads to an absurd result. As observed, § 45-23-60(a) makes it mandatory for a planning board to find that the "proposed development" complies with the local zoning ordinance. Under the Planning Board's interpretation, therefore, it is necessary to reject, without further deliberation, every proposed subdivision which creates zoning nonconformity on adjacent lots. This makes little sense, considering that the Development Review Act and the Zoning Enabling Act, the statute governing municipal zoning ordinances, generally provide mechanisms by which planning and zoning authorities may decide, in particular cases, that the strict enforcement of a regulation or ordinance is unwarranted.
The Development Review Act, for instance, gives a planning board the power to grant waivers or modifications to subdivision regulations.See § 45-23-62(b).[9] Here, in the same decision in which it rejected Allen Rock's subdivision because certain structures on neighboring lots would lie within the setback, the Planning Board used this authority to grant waivers from §§ 200-44(F), 200-44(G), and 200-47(E) of the Barrington subdivision regulations. In particular, the Planning Board permitted construction of a new street 22 feet in width, less than the 26-foot width requirement of § 200-44(F). The Planning Board also waived the requirements of § 200-44(G), which stipulates that street center lines at intersections either "precisely coincide or be offset by a minimum of two hundred (200) feet." The road proposed by Allen Rock would intersect Rumstick Road at *Page 13 
a distance of 60 feet from another road, Pheasant Lane, which enters Rumstick Road from the opposite side. Finally, § 200-47(E) requires a lot depth-to-width ratio of no greater than 2.5: 1. The Planning Board waived this requirement as well, approving lots with ratios of 5.30:1, 3.40:1, and 3.75:1.
Although the Planning Board was able to grant waivers for the above dimensional irregularities, it was not able to grant waivers for what it believed would be violations of the setback provisions of the zoning ordinance. Proposed subdivisions that would violate zoning ordinances can only be approved if the applicant obtains a variance, in a separate proceeding, from the zoning board. See § 45-23-61(a)(1);[10] see alsoYork v. Town of Ogunquit, 769 A.2d 172, 177 (Me. 2001) ("Although the [Planning] Board may waive Subdivision Standards requirements, it is not granted the authority to waive Zoning Ordinance provisions.").[11] A planning board has authority to approve such a subdivision application conditionally, while the applicant seeks a variance. See
§ 45-23-61(a)(1); Sawyer v. Cozzolino, 595 A.2d 242, 247 (R.I. 1991) (variance applicant should have applied for conditional subdivision approval from planning board then sought variance from zoning board for substandard lots).
However, in this situation, just as the planning board could not grant a waiver, it also could not approve the application on the condition that Allen Rock obtain a variance. *Page 14 
The purpose of a variance is to "provide a landowner with a means of having his property relieved from the terms of an ordinance, with which terms the property in question cannot conform." Slawson v. Zoning Bd. ofReview of Barrington, 102 R.I. 552, 556, 232 A.2d 362, 364 (R.I. 1967) (emphasis added). Assuming that the proposed subdivision did cause the adjacent lots to become dimensionally nonconforming, only the adjacent landowners, not Allen Rock, could seek variances.
Accordingly, under the Planning Board's interpretation, although it is possible to ease the literal application of subdivision regulations and zoning ordinances when violations would occur on a subdivision itself, there is no recourse where a proposed subdivision would cause some aspect on adjacent lots to no longer comply with the local zoning ordinance. Disapproval of any such application is required. It would not matter, for example, if the zoning ordinance infringement were minor, if the subdivision had been designed to minimize the violation as much as possible, or if adjacent landowners had deliberately located structures on their properties so as to prevent subdivision approval. In the instant matter, the Planning Board also would be unable to take into account the fact that the road would add frontage to Lots 1 and 2, arguably increasing overall compliance with the Zoning Ordinance and implementing the plan approved by the Zoning Board in 1963.
This Court concludes that it could not have been the intent of the Legislature to single out, for immediate rejection, every subdivision application of the type proposed by Allen Rock. Therefore, the most logical interpretation is that § 45-23-60(a)(2) requires only that the property within a proposed subdivision be in compliance with the local zoning ordinance. If the Legislature had intended to include property outside the *Page 15 
proposed subdivision within the meaning of "proposed development," it would have provided a mechanism to temper the harsh effect of the statute.
As a further matter, the Planning Board's broad reading of the term "proposed development" is not consistent with the way that phrase customarily has been interpreted and applied. When reviewing a subdivision application, the focus of a planning board typically is on whether the lots within a proposed subdivision will comply with the zoning ordinance. See, e.g., 8 Patrick J. Rohan, Zoning and Land UseControls, § 45.01[1] (2007) ("One of the standard items reviewed as part of the subdivision review process is whether the proposed lots will conform with the dimensional requirements imposed on the applicable zone."); 4 Anderson's American Law of Zoning, § 25.21 (4th ed. Young 1997); ("While the zoning power and authority to review plats are separate, it seems clear that plats should not be approved which violate existing zoning regulations.");[12] N.Y. Town Law § 277 (Consol. 2008) ("Where a zoning ordinance or local law has been adopted by the town, the lots shown on said plat shall at least comply with the requirements thereof. . . .").[13] The Planning Board's interpretation would *Page 16 
represent an expansion of the phrase "proposed development" beyond its ordinary application.
In Rhode Island, courts addressing the requirement that subdivisions comply with the zoning ordinance typically have heard cases in which the issue was whether the subdivision itself would comply with the local zoning ordinance. For instance, in Snyder v. Zoning Bd. of Review ofWesterly, 98 R.I. 139, 142, 200 A.2d 222, 224 (1964), the Rhode Island Supreme Court, examining the lots within a plat, determined that the lots met the dimensional requirements of the zoning ordinance.[14]
Often the issue has been whether a zoning board should grant a variance, pursuant to the procedure outlined in § 45-23-61(a)(1), so as to permit subdivision approval. See, e.g., Bamber v. Zoning Bd. of Review of theTown of Foster, 591 A.2d 1220, 1222-23 (R.I. 1991) (subdivision applicant required to seek variance from zoning board for proposal in which lots would not meet frontage requirements of zoning ordinance).Town of Cumberland v. Susa, No. P.C. 01-3726, 2007 R.I. Super. LEXIS 161, at *34-35 (R.I.Super.Ct., November 2, 2007) (planning board did not possess authority to approve plan that would produce lots violating zoning ordinance). In fact, in 1963, when Norman McCulloch sought to subdivide his property, he sought Zoning Board permission because the lots in the subdivision would not comply with the frontage requirements of the Zoning Ordinance.
Finally, in keeping with the view that it is the proposed subdivision itself that must comply with the zoning ordinance, the Board of Appeal has determined that the *Page 17 
term "proposed development," as defined in its own regulations, includes only the property within the subdivision. Although this Court reviews questions of statutory interpretation de novo, it grants deference to agencies or boards, including planning boards of appeal, where an interpretation is not clearly unauthorized. Here, to the extent that there remains ambiguity about the term "proposed development," this Court grants deference to the Board of Appeal's interpretation.
The Nicholsons present almost no authority for the proposition that a planning board must deny every subdivision application causing adjacent lots to become dimensionally nonconforming in some way. Their only authority is a non-binding Superior Court decision, R K Building v.City of Woonsocket, No. P.C. 04-803, 2005 R.I. Super. LEXIS 39, (R.I.Super.Ct., Feb. 11, 2005). In R K Building, a case with a similar fact pattern, the plaintiff sought permission from the Woonsocket Planning Board to create a nine-lot residential subdivision. Id. at *2. The plan called for building a road to the lots on a right-of-way such that two abutting properties would be converted into corner lots. Id. As a result, the setback requirement on the abutting lots would have increased from 10 to 20 feet, which the Court found would render one of the homes dimensionally nonconforming and increase the nonconformity on the other lot, where an existing house was eight feet from the right-of-way. Id. at *2-3.
Determining that the subdivision would not be in compliance with the Woonsocket Zoning Ordinance, the Woonsocket Planning Board denied the application. Id. at *4. The Woonsocket Zoning Board, acting in its capacity as a planning board of appeal, subsequently affirmed.Id. at *5. On appeal, the Court affirmed the board of appeal's decision, concluding that, pursuant to § 45-23-60(a)(2), a planning board may *Page 18 
consider whether lots outside a proposed subdivision would remain in compliance with zoning ordinance provisions. Id. at *15-16. The Court reasoned that the Development Review Act "should not be interpreted in a manner that is inconsistent with the City's zoning ordinance and comprehensive plan." Id. at *16.[15] In so ruling, the Court emphasized the principle that a statute should not be construed "to reach an absurd result." Id. (quoting Jeff Anthony Props. v. Zoning Bd.of Review, 853 A.2d 1126, 1230 (R.I. 2004).
This Court recognizes the impetus not to construe § 45-23-60(a)(2) so as to permit the creation of situations in which adjacent lots do not conform to zoning ordinance provisions. Yet, this Court finds it would be more absurd to require that all subdivision applications such as Allen Rock's be rejected, regardless of the significance of the nonconformity, without recourse to mechanisms such as waivers or variances.[16] Moreover, in this Court's view, an interpretation of "proposed development" that is limited to the subdivision itself is consistent with the phrase's plain meaning, its customary application in Rhode Island, and the Board of Appeal's own interpretation, to *Page 19 
which this Court grants deference.[17] Accordingly, this Court finds that § 45-23-60(a) and the corresponding Barrington subdivision regulation require only that the Allen Rock subdivision itself be in compliance with the Barrington Zoning Ordinance.
 B Creation of Nonconformity
This Court would uphold the Zoning Board's decision even if it upheld the Planning Board's interpretation of § 45-23-60(a). As observed, the Board of Appeal's decision emphasizes the history of the lots at issue to conclude that the structures on the property "are pre-existing lawful, nonconforming uses" and that the structures "were legal when they were built and will remain legal." Although the Board's reasoning is somewhat vague, this Court finds that the proposed road would not cause nonconformity on adjacent lots or that any nonconformity created would be lawful.
Further explaining its logic in a memorandum to this Court, the Board of Appeal argues that "the present case is akin to `incipient dedication' cases." (See Reply Brief of the Board of Appeal at 3). "Incipient dedication" is the act of depicting streets on a recorded plat map as a means of offering such streets to the public.See Newport Realty, Inc. v. Lynch, 878 A.2d 1021, 1033 (R.I. 2005). An incipient dedication requires "a manifest intent by the landowner to dedicate the land in question." Donnelly v. Cowsill, 716 A.2d 742,747-48 (R.I. 1998) (quoting Robidoux v. Pelletier, 120 R.I. 425, 433,391 A.2d 1150, 1154 (1978)). A long line of cases dating from the nineteenth century has *Page 20 
recognized the practice of incipient dedication, which is a "bedrock principle in [Rhode Island] jurisprudence." Newport Realty Inc.,878 A.2d at 1035.[18]
Although the Board of Appeal does not flesh out its argument, the Board implies that what has been termed a "paper street" already exists between Lots 1 and 2. See Robidoux, 120 R.I. at 438 n. 2,391 A.2d at 1157 n. 2 ("A paper street is a street which appears on a recorded plat but which in actuality has never been open, prepared for use, or used as a street."). Many municipalities treat paper streets just like actual, constructed streets when determining setback requirements.See, e.g., City of Battle Creek v. Madison County Bd. ofAdjustment, 609 N.W.2d 706, 708 (Neb.Ct.App. 2000) (landowners required to comply with setback requirement to construct garage on lot bordered by platted, undeveloped street); see also Matteo v. WarwickZoning Bd. of Review, No. K.C. 96-0561, 1997 R.I. Super. LEXIS 85, at *1-2 (R.I.Super.Ct., July 23, 1997) (variance sought from setback and other dimensional requirements to build single family home on paper street).[19] *Page 21 
Therefore, it might arguably be the case that Lots 1 and 2 are already corner lots subject to a 50-foot setback requirement. Indeed, the 1963 plat map directs Barrington authorities to treat Lots 1 and 2 like corner lots, for zoning purposes.[20] If this is the case, Allen Rock's subdivision would not alter the setback requirement that applies to those lots. To the extent that Lots 1 and 2 would not be in compliance with the setback provisions of the Zoning Ordinance, Allen Rock's subdivision would not be responsible.
Determining whether an incipient dedication has been made "is purely a question of determining from the facts of the particular case the owner's intent." See Robidoux, 120 R.I. at 433, 391 A.2d at 1154.[21]
Notwithstanding that the Board of Appeal's decision alludes to the history of the parcels in question, the decision does not state whether the 50-foot strip was ever dedicated to the public as a road or whether the proposed subdivision would indeed convert Lots 1 and 2 into corner lots. Nor does it reach whether the Barrington Zoning Ordinance enforces setback requirements with respect to paper streets.
This Court notes the well-settled rule that "a zoning board of review is required to make findings of fact and conclusions of law in support of its decisions in order that such actions may be susceptible of judicial review." Cranston Print Works Co. v. City of Cranston,684 A.2d 689, 691 (R.I. 1996) (quoting Thorpe v. Zoning Bd. of Review of *Page 22 North Kingstown, 492 A.2d 1236, 1236-37 (R.I. 1985)). Such findings "must, of course, be factual rather than conclusional, and the application of the legal principles must be something more than the recital of a litany." Bernuth v. Zoning Bd. of Review of the Town of NewShoreham, 770 A.2d 396, 401 (R.I. 2001) (quoting Irish Partnership v.Rommel, 518 A.2d 356, 358-59 (R.I. 1986)).
This Court is hesitant to make the finding, based on a review of the 1963 plat map and other evidence in the record, that a 50-foot setback already applies to the adjacent lots, given that the Board of Appeal's decision is itself unclear as to the present setback requirement. Nevertheless, such a finding by this Court is not necessary, as the alternative assumption, that the Allen Rock subdivision actually would change the setback requirement on the adjacent lots, leads to the same result. In its decision, the Board of Appeal did find that the structures on Lots 1 and 2 not meeting the 50-foot setback requirement are "pre-existing, lawful nonconforming uses." Assuming that the existing setback requirement is only 30 feet, and that the Allen Rock subdivision would increase the setback to 50 feet, this Court agrees that such structures would remain legal, as they would become nonconforming by dimension.
Rhode Island statute defines "nonconformance" as "a building, structure, or parcel of land, or use thereof, lawfully existing at the time of the adoption or amendment of a zoning ordinance and not in conformity with the provisions of that ordinance or amendment." G.L. 1956 § 45-24-31(49). A nonconforming use is "a particular use of property that does not conform to the zoning restrictions applicable to that property but which use is protected because it existed lawfully before the effective date of the enactment of the zoning restrictions and has continued unabated since then." RICO Corp. *Page 23 v. Town of Exeter, 787 A.2d 1136, 1144 (R.I. 2001) (citing Town ofScituate v. O'Rourke, 103 R.I. 499, 503, 239 A.2d 176, 179 (1968)). Similar to the concept of a nonconforming use, buildings or structures originally, but no longer in compliance with a zoning ordinance's dimensional requirements, such as a setback provision, are considered "nonconforming by dimension." See § 45-24-31(49).[22]
There is nothing in the record to indicate that this is a circumstance in which a new zoning ordinance was approved, causing previously conforming structures no longer to comply with the Barrington Zoning Ordinance. The Board of Appeal's decision does not specify when the encroaching structures on Lots 1 and 2 were built, what the setback requirement was at the time, and how the setback requirements of the Barrington Zoning Ordinance have evolved over time.[23] Nevertheless, assuming that the structures on Lots 1 and 2 are presently subject only to a 30-foot setback requirement, but that the Allen Rock subdivision would impose a 50-foot setback requirement, the Zoning Ordinance will have effectively changed, insofar as its application to Lots 1 and 2. This Court does not promote "form over substance" in interpreting statutes. See, e.g., New Harbor Vill., LLC v. Town of New ShorehamZoning Bd. of Review, 894 A.2d 901, 905 (R.I. 2006). If the structures on Lots 1 and 2 were legal when built but will be rendered no longer in compliance with the Zoning Ordinance due a change in the setback requirement as applied to those lots, such lots may be considered nonconforming by dimension, pursuant to § 45-21-31(49). *Page 24 
Accordingly, this Court finds that the proposed subdivision would not lead to the creation of unlawful dimensional nonconformance on the adjacent lots. Assuming that, due to the existence of a paper street between Lots 1 and 2, those lots already are corner lots, the subdivision would have no effect on whether the structures on those lots comply with the Zoning Ordinance. Alternatively, if the proposed subdivision would, indeed, increase the setback requirement to 50 feet, then the existing structures would be considered nonconforming by dimension and, therefore, legal.[24]
This Court reaches its decision without addressing some of the principal arguments advanced by the Board of Appeal and Allen Rock. For instance, it is argued that the Nicholsons are "estopped" from asserting that the proposed subdivision would cause their lot to violate the setback provisions of the Zoning Ordinance because they had notice, based on a reference to the 1963 plat in their own deed, of the potential for a road. Another argument is that Allen Rock maintains a "right" to construct the same road that was depicted on the approved 1963 plat.[25] Neither of these arguments is well-supported legally, and, in any case, the Court finds it unnecessary to reach them, or any other remaining argument. *Page 25 
 III Conclusion
This Court upholds the Board of Appeal's decision overturning the Planning Board's denial of Allen Rock's subdivision application. The Planning Board, in determining whether the Allen Rock subdivision would be in compliance with the Barrington Zoning Ordinance, only had authority to consider whether the land constituting the proposed subdivision would comply. Furthermore, even if the Board of Appeal were required to consider whether the proposed subdivision would lead adjacent lots to be out of compliance with the Zoning Ordinance, in this case, the subdivision either would not be the source of any noncompliance with the Zoning Ordinance or the adjacent lots would be rendered legally nonconforming by dimension.
Counsel for the prevailing party shall submit forthwith for entry an order and judgment that is consistent with this Decision.
[1] Specifically, the Zoning Board heard testimony that "the violations would no longer exist after the entire parcel is platted as the frontage would then be on the proposed road." (Ex. 2, minutes of Zoning board meeting dated 5/16/63.)
[2] Allen Rock submitted a revised application on December 9, 2005. (Planning Board Dec. at 1).
[3] The Zoning Ordinance defines "setback line or lines" as:
 "A line or lines parallel to a lot line at the minimum distance of the required setback for the zoning district in which the lot is located, that establishes the area within which the principal structure must be erected or placed." Barrington Zoning Ordinance § 185-5.
A "lot line" is defined as a "line of record, bounding a lot, which divides one lot from another lot, or from a public or private street or any other public or private space. . . ." Id.
[4] The Board of Appeal's decision restates the Nicholson's position that the side yard setback requirement in Barrington's R-40 zoning district is 30 feet; the Board of Appeal does not reach this conclusion independently. Although this Court is unable to verify that the relevant side yard setback requirement is 30 feet, it will assume so for the purposes of this Decision.
[5] Neither the Planning Board nor the Zoning Board made findings as to the distance the deck would be from the edge of the Nicholson's lot.
[6] The evidence reveals that the Nicholsons indeed had actual or constructive notice of the potential for a road. In March 1965, the McCullochs sold Lot 1 to Deforest and Virginia Abel. (Ex. 2, deed of conveyance dated 3/22/85). The deed, identifying the lot as the one on the 1963 plat, refers to the 50-foot strip as "land of the grantor, Mary E. McCulloch, reserved for street purposes." Id. In September 1973, the Abels sold Lot 1 to the Nicholsons. (Ex. 2, deed of conveyance dated 9/26/73.) The deed again describes the property as the one on the 1963 plat and makes note of an area "reserved for street purposes."Id.
[7] The Zoning Board's decision cites "§ 45-23-60(2)." This Court will assume that the decision refers to § 45-25-60(a)(2).
[8] The Zoning Enabling Act and the Barrington Zoning Ordinance both define "development" as "[t]he construction, reconstruction, conversion, structural alteration, relocation, or enlargement of any structure; . . . or any change in use, or alteration or extension of the use, of land." G.L. 1956 § 45-24-31(20); Barrington Zoning Ordinance § 185-5;see also § 45-23-32 (definitions in Zoning Enabling Act have same meaning in Development Review Act); Barrington Land and Subdivision Regulations § 200-5 (definitions in Zoning Enabling Act may be used to interpret Barrington subdivision regulations). This definition instructs that a development consists of the land use changes that occur, implying a focus on the actual land where such changes occur, but it does not rule out a broader definition of "development."
[9] Pursuant to § 45-23-62(b), a planning board may grant a waiver or modification of a subdivision regulation,
 "where the literal enforcement of one or more provisions of the regulations is impracticable and will exact undue hardship because of peculiar conditions pertaining to the land in question or where waiver and/or modification is in the best interest of good planning practice and/or design as evidenced by consistency with the municipality's comprehensive plan and zoning ordinance."
[10] Section 45-23-61(a)(1) provides:
 "Where an applicant requires both a variance from the local zoning ordinance and planning board approval, the applicant shall first obtain an advisory recommendation from the planning board, as well as conditional planning board approval for the first approval stage for the proposed project, which may be simultaneous, then obtain conditional zoning board relief, and then return to the planning board for subsequent required approval(s)."
Although a planning board of appeal and a zoning board of review in practice are often composed of the same members, their duties are distinct. See, e.g., § 45-23-69(c) (zoning board acting as board of appeal must hold separate meetings and maintain separate minutes and records).
[11] To obtain a dimensional variance from a zoning board, the applicant must show that the hardship suffered without the dimensional variance "amounts to more than a mere inconvenience." Section 45-24-41(d)(2); see also Lischio v. Zoning Bd. of Review, 818 A.2d 685,691 (R.I. 2003).
[12] See also Edward H. Ziegler, Rathkopf's The Law of Zoning andPlanning, § 90:2 (Thomson/West 2007) ("Where a zoning ordinance has been adopted, [subdivision approval requires] that the plots shown on the plat shall at least comply with the requirements thereof in respect to minimum area, frontage on the proposed streets and roads, and width.").
[13] Relatively few states have subdivision enabling acts which specifically provide that new subdivisions must comply with applicable zoning ordinance restrictions. See Edward H. Ziegler, Rathkopf's The Lawof Zoning and Planning, § 90:24 (Thomson/West 2007). Connecticut, among these states, provides by statute that planning authorities are not authorized "to approve any such subdivision or resubdivision which conflicts with applicable zoning regulations." Conn. Gen. Stat. § 8-26
(2008). Although this statute, like Rhode Island's, does not expressly limit itself to lots within a proposed subdivision, several decisions by Connecticut trial courts have affirmed that it is the proposed development itself, and not surrounding properties, that must be in compliance with zoning ordinance provisions. See Kordiak v.Woodbridge, No. CV 92-0336745, 1993 Conn. Super. LEXIS 1859, at *6 (Conn.Super.Ct., July 21, 1993) ("The provisions of § 8-26 relied on refer not to adjoining properties but to the land that is to be divided."); Florian v. Cheshire Planning Zoning Comm'n, No. CV 02-0279661, 2003 Conn. Super. LEXIS 1651, at *24 (Conn.Super.Ct., May 30, 2003) (planning commission should not have denied subdivision application because garage on adjacent property would fall within required setback).
[14] See also Woodfield Farm, LLC v. Zoning Bd. of Review ofWarwick, No. K.C. 04-0849, 2007 R.I. Super. LEXIS 1, at *23-24 (R.I.Super.Ct., Jan. 3, 2007) (board of appeal did not properly address evidentiary issues concerning whether subdivision itself would violate density requirements of zoning ordinance); John Dusel v. Berlinsky, No. W.C. 05-0110, 2005 R.I. Super. LEXIS 142, at *10-12 (R.I.Super.Ct., Sept. 12, 2005) (board of appeal properly denied subdivision application because lots created would not meet the area requirements of zoning ordinance).
[15] Pursuant to § 45-23-31(a), "local [subdivision] regulations shall . . . be consistent with the adopted local comprehensive plan, local zoning ordinance and all other duly adopted local development regulations." Furthermore, § 45-23-31(b) provides:
 "In the instance of uncertainty in the construction or application of any section of the local regulations, the local regulations shall be construed in a manner that will further the implementation of, and not be contrary to, the goals and policies and applicable elements of the comprehensive plan. Furthermore, the local regulations shall be construed in a manner which is consistent with the legislative findings, intents, and purposes of §§ 45-23-25 — 45-23-74." See also Barrington Land Development and Subdivision Regulations § 200-3 (implementing § 45-23-31(b)).
[16] This Court does not conclude that a planning board may never consider whether a proposed subdivision would cause zoning ordinance violations on adjacent lots. For instance, perhaps such considerations could be addressed pursuant to § 45-23-60(a)(1), which requires that a "proposed development" be consistent with the comprehensive community plan, but which permits a planning board to conclude, on its own, that any inconsistencies have been satisfactorily resolved.
[17] The Board of Appeal, in its decision, did not find R KBuilding "to be binding or particularly persuasive." (Board of Appeal Dec. at 7.)
[18] An incipient dedication does not immediately create a public road. See Newport Realty, Inc., 878 A.2d at 1035 (incipient dedication is only the "first step"). Once a landowner demonstrates an intent to dedicate the road, it must be accepted by the public; this occurs either by formal acceptance by a municipality or by public use of the land as a road. Id. at 1034 (citing Mill Realty Associates v. Zoning Board ofReview of Coventry, 721 A.2d 887, 891 (R.I. 1998). "[O]nce there has been some form of acceptance by official action or by public use, the street becomes a public highway." Id. at 1033 (citing Catalono v.Woodward, 617 A.2d 1363, 1368 (1992)); see also Section 45-23-43(f) ("Signature and recording as specified in § 45-23-64 constitute the acceptance by the municipality of any street or other public improvement or other land intended for dedication."); Town of Coventry Zoning Bd. ofReview v. Omni Dev. Corp., 814 A.2d 889, 902 (R.I. 2003) ("signature and recording of the final plat . . . constitutes acceptance by the municipality of any street or other public improvement").
[19] Whether a dedicated, but unaccepted street counts as a street subject to a zoning ordinance's setback requirements may ultimately depend on an interpretation of the zoning ordinance itself. See Smith v.Zoning Bd. of Appeals, 200 N.E.2d 279, 282 (Mass. 1964) (zoning ordinance would need to be interpreted to determine whether setback requirement applied to construction along paper streets). In Rhode Island, streets depicted on plat maps are usually, at minimum, taken into account in the context of planning decisions. For instance, municipalities are empowered to prevent the construction of buildings in the bed of mapped, but unopened streets. See G.L. 1956 § 45-23.1-3.
[20] In 2005, the Nicholsons received a building permit to enclose their deck. (Tr. at 44-45). Their permit application appears to state that the side yard facing the proposed road is 52 feet in depth. (Ex. 7, building permit application.) Allen Rock argues that the Nicholsons misrepresented the depth of their side yard in order to obtain the permit and that this constitutes an acknowledgment that the setback requirement is already 50 feet.
[21] Generally, "the filing and acceptance of a plat plan are sufficient evidence of a landowner's intent to dedicate land for road purposes, particularly in situations in which lots are subsequently sold with reference to the recorded plat." Newport Realty, Inc.,878 A.2d at 1033 (quoting Donnelly v. Cowsill, 716 A.2d 742, 748 (R.I. 1998). However, in situations where a plat map is unclear as to its intended purpose, "it is the task of the fact-finder to interpret the meaning of the disputed item by careful scrutiny of all lines, figures, and letters that appear on the map as well as whatever pertinent evidence may be adduced by the litigants." Robidoux, 120 R.I. at 434, 391 A.2d at 1155
(citing Volpe v. Marina Parks, Inc., 101 R.I. 80, 86, 220 A.2d 525,529).
[22] The Board of Appeal characterized the structures at issue on Lots 1 and 2 as "pre-existing, lawful nonconforming uses." Based on the aforementioned definitions, such structures would be characterized more aptly as "nonconforming by dimension."
[23] As to the Nicholson's home, the 1963 plat shows a house on Lot 1 located 50 feet from the lot line on the side abutting the proposed road. (Ex. 1.) The plat map from 1986 does not depict a deck and shows that at that time the house remained at a distance of 50 feet. (Nicholson's Memo. Ex. E.) It would appear, therefore, that the Nicholson's deck was added after 1986.
[24] Furthermore, although the issue has not been raised, this Court is aware that setback requirements have sometimes been defined as affecting development only in instances where a new building or structure is built. It has been observed that "[s]etback requirements restrict a property owner from building structures within a specified distance of an existing street or property line." 8 Patrick J. Rohan, Zoning and Land Use Controls, § 46.02[2] (2007) (emphasis added);see also Pitcher v. Wayne, 599 A.2d 1155, 1157 n. 2 (Me. 1991) (ordinance's setback requirements applied to "[n]ew structures and additions to existing structures"). Here, however, the Barrington Zoning Ordinance, defining the setback requirement for corner lots, states that "at each street frontage there shall be a [minimum] yard depth. . . ." Barrington Zoning Ordinance § 185-18. This provision does not, in any direct way, limit the applicability of setbacks to new building construction. Accordingly, this Court assumes that the ordinance applies whenever a building is not set back at the required distance.
[25] Such an interpretation obscures that, assuming there was an incipient dedication, it is the Town of Barrington, not Allen Rock, which retains the authority to decide when, and if, to accept the road and open it to the public. Nor does Allen Rock possess a right, on the basis of the 1963 plat, to open a private road on the 50-foot strip.See Barrington Land Development and Subdivision Regulations § 200-41(C) ("Private streets shall not be permitted."). *Page 1