**Supreme Court**

| | | |
|---|---|---|
| Craig Sacco | : | No. 2011-21-Appeal. |
| | | (PC 08-4500) |
| v. | : | |
| Cranston School Department. | : | |
| | | |
| Charles Pearson | : | No. 2011-22-Appeal. |
| | | (PC 08-4079) |
| v. | : | |
| Cranston School Department. | : | |

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

to arbitrate either grievance. As a result, the plaintiffs separately filed suit in the Superior Court, seeking a declaration that their coaching positions were covered by the CBA; they also sought an order compelling arbitration of their grievances. Both complaints were dismissed by the hearing justice, albeit by different justices of the Superior Court. The plaintiffs have appealed to this Court.

For the reasons set forth in this opinion, we affirm the judgments of the Superior Court.

Facts and Travel

The underlying facts in these consolidated cases are not in dispute. At all times relevant to this appeal, the plaintiffs were employed as teachers within the Cranston public school system. In addition to his teaching duties, Sacco served as the varsity baseball coach at Cranston West, a position he had held since 1998. On March 15, 2007, Sacco wrote a letter to the school department expressing his concern about the progress of facility improvements to the baseball field at Cranston West. As a result of comments attributed to Sacco in this letter, Michael A. Traficante, the superintendent of the Cranston public schools, advised Sacco by a letter dated May 18, 2007, that the renewal of his coaching contract for the 2007 baseball season was "not in the best interest of the overall school community."

Pearson served as the varsity football coach at Cranston West, a position he had held since 2003. During his tenure as coach, Pearson also taught physical education within the Cranston public school system. On December 5, 2007, after

- 2 -

to submit to arbitration. The plaintiffs filed suit, seeking a declaratory judgment that they were entitled to binding arbitration, as guaranteed by the CBA. Cross-motions for summary judgment were filed by the parties. On September 30, 2010, the trial justice determined that the plaintiffs—in their capacity as coaches—were not entitled to avail themselves of the CBA's grievance procedures. The trial justice granted the defendant's motion for summary judgment in each case and denied the respective motions for summary judgment and declaratory judgment sought by the plaintiffs.

These appeals ensued. Having carefully reviewed the memoranda submitted by the parties and the arguments of counsel, we are satisfied that cause has not been shown and the appeals may be decided at this time. We affirm the judgment of the Superior Court.

**Facts and Travel**

It is undisputed that both Sacco and Pearson are teachers at Cranston West; additionally, Sacco was head coach of the school's varsity boy's hockey team for nine years, and Pearson was head coach of the varsity girl's soccer team for seven years. According to school department policy, all coaches undergo annual evaluations at the end of each season by the school department athletic director, Michael Traficante (athletic director or Traficante).

In accordance with this policy, Pearson and Sacco were evaluated at the conclusion of the 2007-2008 season. Each received an unfavorable evaluation. As a result, Pearson was placed on probation for one year.[2] Sacco was removed from his coaching position based on his unsatisfactory evaluation.

Both plaintiffs disputed the substance of the charges levied against them in the evaluations and sought to file grievances under Article VI of the CBA, which was effective

---

[2] According to Traficante's evaluation, Pearson was classified as probationary, "to be recommended for reassignment [to the position] provided an understanding can be reached where improvement is recommended."

September 1, 2005 through August 31, 2008. Article VI A.1. details grievance procedures and defines a "grievance" as "a complaint by a teacher or the Alliance (1) that there has been as to him/her or to it, a violation or inequitable application of any of the provisions of this contract or (2) that he/she or it has been treated inequitably * * * contrary to established School Committee policy."

The school department refused to submit to arbitration because it asserted that the coaches were not employed pursuant to the CBA, but instead were working under separate, one-year coaching contracts. The defendant pointed to Resolution No. 05-6-29, a policy that was adopted by the school department on June 20, 2005, as the operative document setting forth the applicable retention standards governing coaching positions. Resolution No. 05-6-29 establishes that all coaching vacancies must be posted in each building by the superintendent, and that in the absence of qualified candidates within the particular school, the positions will be advertised. The resolution further prescribes the annual evaluation process and specifies that a coach must receive an adequate or better rating on a majority of the five categories evaluated to be reappointed.[3] Sacco and Pearson both failed to attain adequate ratings in more than two categories.

The plaintiffs, however, maintained that, notwithstanding Resolution No. 05-6-29, the policies articulated in the CBA also apply, and define the rights of teachers who are functioning in coaching positions. The plaintiffs sought declaratory relief to challenge the actions of the

---

[3] The evaluation form used by the school department allows the athletic director to score a coach's performance in the five areas of administration, knowledge of the sport, personal qualities, performance, and self improvement. In each category, and in various sub-categories, a coach's performance may be rated as distinguished, adequate, probationary, unsatisfactory, or not applicable. The evaluation also allows space for general commentary by the athletic director.

school department concerning the arbitration procedures outlined in the CBA.[4]  In granting summary judgment to defendants the trial justice determined that "the teachers here who function as coaches are not performing professional services within the contemplation of the collective bargaining agreement when they are functioning as coaches."  In so doing, the trial justice relied on Harbor Creek School District v. Harbor Creek Education Association, 640 A.2d 899, 902 (Pa. 1994), as persuasive authority for the proposition that extracurricular work that traditionally is performed by teachers is not professional in nature and, consequently, is not arbitrable under the CBA.[5]  The plaintiffs urge this Court to reverse the judgment of the Superior Court and to hold that Sacco and Pearson, in their capacity as coaches, may avail themselves of the CBA's grievance procedures.  We decline to do so.

### Standard of Review

"It is well established that this Court reviews a grant of summary judgment de novo."  Moore v. Rhode Island Board of Governors for Higher Education, 18 A.3d 541, 544 (R.I. 2011) (citing Waterman v. Caprio, 983 A.2d 841, 844 (R.I. 2009)).  "We view the evidence in the light most favorable to the nonmoving party, and 'if we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law[,]' we will affirm the judgment."  Id. (quoting Berman v. Sitrin, 991 A.2d 1038, 1043 (R.I. 2010)).

---

[4] In their Rule 12A statements, plaintiffs also argue that the school department's actions toward Sacco and Pearson were inequitable because plaintiffs were removed from their coaching positions in violation of Resolution No. 05-6-29.  We note that the only question before this Court is whether plaintiffs were entitled to submit their grievances to arbitration in accordance with the CBA.  We need not pass upon the separate question of whether the school department complied with Resolution No. 05-6-29, nor do we speculate about what remedy, if any, was available to plaintiffs arising from any purported contract violations.  That issue is not before us.

[5] The trial justice also determined that there was insufficient evidence of past practice by the school department of submitting issues involving coaches to the grievance procedures described in the CBA.  The plaintiffs did not challenge that finding.

"Whether a particular collective bargaining agreement contains clear language creating a duty to arbitrate a particular dispute is a matter for judicial determination." School Committee of North Kingstown v. Crouch, 808 A.2d 1074, 1078 (R.I. 2002) (citing Local Union 1393 International Brotherhood of Electrical Workers, AFL-CIO v. Utilities District of Western Indiana Rural Electric Membership Cooperative, 167 F.3d 1181, 1183 (7th Cir. 1999)). "Because arbitrability is a question of law, we review such determinations de novo." Crouch, 808 A.2d at 1078.

## Analysis

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Crouch, 808 A.2d at 1078 (quoting AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986)). This Court has held that "[n]o one is under a duty to arbitrate unless with clear language he [or she] has agreed to do so." Id. (quoting Stanley-Bostitch, Inc. v. Regenerative Environmental Equipment Co., 697 A.2d 323, 326 (R.I. 1997)). In the absence of clear language in the CBA providing that plaintiffs—in their capacities as coaches—have a right to submit grievances to the arbitration and grievance procedures, no such right will be read into the contract. Therefore, it is our task to look to the CBA and the rights enunciated in it to determine whether there is an express agreement to arbitrate the rights of teachers who are working as sports-team coaches.

Article VI of the CBA sets forth the provisions concerning grievance resolution procedures. Article VI A.1. defines "grievance" and specifies that the term encapsulates complaints made by "a teacher or the Alliance." Because the alliance is not a party to this suit, plaintiffs may avail themselves of Article VI only in their professional capacity as teachers. Article II of the CBA defines the term "teacher" as inclusive of "certified classroom teachers,

teachers of the homebound, librarians, nurses, guidance counselors, reading consultants, department chairpersons, social workers and 10 month psychologists * * * excluding per diem teachers." Importantly, while nurses, guidance counselors, and librarians are among those employees classified in the CBA as teachers, coaches are not. We deem the omission determinative. It is our opinion that if the school district or the union intended for coaches to enjoy the rights of teachers in their professional capacities, it would have included the term in the definitional section.

Additionally, our review of Resolution No. 05-6-29 discloses that although coaching vacancies initially are made available to those teachers assigned to a particular school, a coach may be hired from outside the school system and need not be a teacher nor a member of the collective bargaining unit. It follows that although some coaches also may be teachers, there is no concomitant requirement that a coach also hold a teaching position.

Furthermore, the CBA specifically refers to extracurricular positions in only two places. Article XXIV sets forth various considerations that primarily apply to the hiring of teachers for extracurricular roles. Article XXIV E. provides that when extracurricular position vacancies are filled, the applicant with the greatest seniority as a teacher shall be given preference, provided that the applicant is as equally qualified as are the remaining applicants. Additionally, Appendix D to the CBA sets forth a salary supplement scale for teachers who hold extracurricular positions. Nowhere in Article XXIV or Appendix D does the CBA grant to those who hold extracurricular positions the same panoply of benefits and protections that the CBA affords to teachers. Because neither hiring nor compensation for extracurricular jobs is at issue here, Article XXIV and Appendix D are not relevant to our analysis.

Article VI of the CBA sets forth the grievance procedures available to teachers who wish to pursue a complaint; however, those provisions do not refer to, encompass, or otherwise

incorporate the CBA provisions in Article XXIV and Appendix D about teachers who hold extracurricular positions. Thus, we cannot "clearly and unambiguously" discern any provision in the CBA specifying that coaches are entitled to the grievance procedures afforded to teachers by Article VI of the CBA. Crouch, 808 A.2d at 1079 (holding that none of the CBA provisions "clearly and unambiguously provided for the arbitration of disputes relating to the dismissal of a tenured teacher for cause").

The question of whether teachers who work in extracurricular coaching capacities are beneficiaries of the grievance protections of the CBA is an issue of first impression in this state. A survey of our sister states reveals numerous opinions that hold that coaches who hold teaching positions do not enjoy the benefits and rights associated with their employment as teachers when acting in a coaching capacity, and may not arbitrate disputes concerning their extracurricular positions under a CBA.[6] As aptly articulated in the opinion of our sister state as quoted by the trial justice, "extracurricular work performed by teachers * * * is work of a non‑professional nature performed under agreements that are merely supplemental to the [CBA]." Harbor Creek School District, 640 A.2d at 902.

---

[6] See, e.g., Smith v. Board of Education of Urbana School District No. 116 of Champaign County, Illinois, 708 F.2d 258, 261 (7th Cir. 1983) (holding that teachers who were also school athletic coaches were not, in their coaching capacity, entitled to the tenure protections afforded teachers under Illinois state law); see also Brayton v. Monson Public Schools, 950 F. Supp. 33, 37 (D. Mass. 1997) (determining that due process rights were not violated when the school fired the plaintiff, because he had no expectation of continued employment in his extracurricular soccer coach position, and his termination as a coach did not affect his teaching position); Matter of Board of Education of Port Jefferson Union Free School District v. Port Jefferson Teachers' Association, 663 N.Y.S.2d 69, 70 (N.Y. App. Div. 1997) (finding that nowhere in the CBA was there express language requiring arbitration of the board of education's decision to deny a teacher a coaching position); Franklin County Board of Education v. Crabtree, 337 S.W.3d 808, 813 (Tenn. Ct. App. 2010) (holding that a grievance resulting from the board of education's decision not to rehire a teacher to her coaching position was not subject to the collective bargaining process). But see Matter of Riverhead Central School District v. Riverhead Central Faculty Association, 528 N.Y.S.2d 611, 612 (N.Y. App. Div. 1988) (determining that a negative evaluation of a physical education teacher's performance as a varsity football coach was subject to arbitration under a CBA).

We are of the opinion that the trial justice was correct in determining that the plaintiffs' coaching positions were contractually distinct from their teaching positions and did not constitute professional employment. Regardless of the advantage in hiring afforded to teachers applying for coaching positions by Article XXIV E., teacher and non-teacher coaches alike ultimately enter into two separate, one-year contracts, governed by Resolution No. 05-6-29. Neither the coaches' contracts nor Resolution No. 05-6-29 grant grievance rights to those coaches who are teachers. Consequently, the plaintiffs in their coaching capacities have no right to pursue relief based on the rights bargained for by the alliance on behalf of its teacher-members and as contained in the CBA.[7]

## Conclusion

For the foregoing reasons, the judgment of the Superior Court is affirmed. The papers in this case may be remanded to the Superior Court.

---

[7] We pause to note that our holding avoids the incongruous result of having a coaching staff at Cranston West in which some coaches—who also happen to be teachers—would enjoy greater rights than coaches who are not teachers because the former may submit their grievances to arbitration while the latter may not, despite the fact that everyone is a party to the same one-year contracts.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**    Craig Sacco v. Cranston School Department.
Charles Pearson v. Cranston School Department.

**CASE NO:**    No. 2011-21-Appeal.
(PC 08-4500)

No. 2011-22-Appeal.
(PC 08-4079)

**COURT:**    Supreme Court

**DATE OPINION FILED:**    October 17, 2012

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**    Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Michael A. Silverstein

**ATTORNEYS ON APPEAL:**

For Plaintiffs:   Kevin M. Daley, Esq.

For Defendant:  Andrew Henneous, Esq.