December 1, 2022

**Supreme Court**

No. 2021-81-Appeal.
(WC 19-228)

| | |
|---|---|
| Asa S. Davis, III | : |
| v. | : |
| Town of Exeter et al. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Asa S. Davis, III                    :

v.                    :

Town of Exeter et al.                    :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on October 4, 2022, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  The plaintiff, Asa S. Davis, III (plaintiff), appeals from a Superior Court judgment entered in favor of the defendants, the Town of Exeter (Exeter or town); Martina E. Baligian a/k/a Martina E. McKenna, or her successor, Trustee of the Living Trust Agreement of Martina E. Baligian-1996, as the same may be amended; and Mark R. Iannuccilli and Rosemary J. Iannuccilli, following the grant of summary judgment in accordance with Rule 56 of the Superior Court Rules of Civil Procedure.  The

- 1 -

town is the only defendant who responded to the plaintiff's appeal.[1]  For the reasons set forth herein, we affirm the judgment of the Superior Court.

## Facts and Travel

On May 23, 1997, plaintiff purchased in excess of one hundred acres of real property designated as AP 36, Block 2, Lot 2 in Exeter.  This property fronts on Ten Rod Road (Route 102) with no driveway or other access from the public road.

The plaintiff is a member of DuTemple Solar LLC (DuTemple).  In October 2018, plaintiff, along with DuTemple, filed a master plan application seeking to install a solar voltaic field on the property, to be known as DuTemple Solar.  On April 11, 2019, the Town of Exeter Planning Board (planning board) denied the application, citing, in part, a lack of "adequate, permanent and safe physical vehicular access to a public street," as mandated by the town's code of ordinances. The plaintiff appealed this decision to the Town of Exeter Zoning Board (zoning board), which denied the appeal unanimously on July 1, 2019.

In his application for master plan review, plaintiff proposed access to the site by way of Estate Drive, an improved, paved road with Cape Cod berms,[2] that was constructed in conjunction with a subdivision known as "Exeter Village."  The plaintiff's property abuts Exeter Village, but is not a part of the subdivision; nor does

---

[1] The remaining defendants are abutting landowners to Estate Drive.

[2] A berm is a type of curb at the edge of the paved area.

plaintiff's deed make reference to the Exeter Village plat map. The record discloses that Estate Drive runs in a southerly direction beginning at Ten Rod Road, with the improved portion terminating at a cul-de-sac. None of plaintiff's property abuts the Estate Drive terminus.

Estate Drive was officially accepted as a public road by the town council in November 2001. During the planning stage, the developer and the town planning board agreed that Estate Drive would end in a "temporary" cul-de-sac and that a "paper street"[3] between the cul-de-sac and plaintiff's property was to be reserved for possible future development. This land was designated on Map 273,[4] the subdivision map for Exeter Village, as a "future roadway extention [*sic*]." The area between the cul-de-sac and plaintiff's property line consists of unimproved woodland.

In order for plaintiff to gain access through Estate Drive, he was directed to apply for a road opening permit by the Town of Exeter Director of Public Works, Stephen Mattscheck (Mattscheck). The town has consistently asserted that the portion of land running from the terminus of the cul-de-sac to plaintiff's property is

---

[3] A "stub street" is defined as "[a] portion of a street reserved to provide access to future development * * *." G.L. 1956 § 45-23-32(49). "A paper street is a street which appears on a recorded plat but which in actuality has never been open, prepared for use, or used as a street." *Robidoux v. Pelletier*, 120 R.I. 425, 438 n.2, 391 A.2d 1150, 1157 n.2 (1978).

[4] Map 273 includes several maps filed with the town in connection with the "Exeter Village" subdivision and the creation of Estate Drive.

a paper street and that plaintiff did not make a proper application to open the road to the town's standards, nor has the paper street been certified and accepted by the town council as a public road. The plaintiff was directed by Mattscheck to apply for a proper road opening permit, which he refused, instead applying for a curb cut, which was denied by Mattscheck.[5]

Undaunted, plaintiff excavated a dirt passageway from the cul-de-sac to his property line in the approximate location of the paper street. The town became aware of the excavation of this pathway in January 2019, when plaintiff called to complain about a tree that had fallen on the area. In response, the town caused jersey barriers to be erected south of the cul-de-sac, blocking any access from Estate Drive. The plaintiff was undeterred. On March 7, 2019, plaintiff undertook efforts to move the concrete barriers and was served with correspondence from Francis DiGregorio, town council Vice President, ordering him to cease and desist removing concrete barriers "from public property at the end of Estate Drive" and "operating private equipment on [the] same public property."

The plaintiff filed this action, seeking a declaratory judgment that Estate Drive is a public road that runs to the boundary of plaintiff's property, that plaintiff has the right to use the full length of Estate Drive and the right of access to his property. He

---

[5] Plaintiff has made representations to this Court that he has made numerous proper applications, but he failed to provide further explanation or documentation. We decline to address these purported efforts.

- 4 -

also sought injunctive relief to prevent the town from denying his use of Estate Drive for development projects, from blocking a portion of Estate Drive so that it cannot be used as a road, and from restricting access to his property by way of Estate Drive. The town filed a motion to dismiss for lack of subject-matter jurisdiction and/or failure to exhaust administrative remedies.

The town's motion to dismiss was converted to one for summary judgment and considered in accordance with Rule 56 of the Superior Court Rules of Civil Procedure. On January 13, 2021, summary judgment was granted, and final judgment was entered on January 25, 2021. On appeal, plaintiff contends that the trial justice erred in ruling that the disputed land was a paper street and in finding that he had failed to exhaust his administrative remedies.

## Standard of Review

"[T]his Court reviews a grant of summary judgment *de novo*." *Sullo v. Greenberg*, 68 A.3d 404, 406 (R.I. 2013) (quoting *Sacco v. Cranston School Department*, 53 A.3d 147, 149-50 (R.I. 2012)). "Examining the case from the vantage point of the trial justice who passed on the motion for summary judgment, '[w]e view the evidence in the light most favorable to the nonmoving party, and if we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law[,] we will affirm the judgment.'" *Id.* at 406-07 (quoting *Sacco*, 53 A.3d at 150). "Although summary judgment is

recognized as an extreme remedy, * * * to avoid summary judgment the burden is on the nonmoving party to produce competent evidence that 'prove[s] the existence of a disputed issue of material fact[.]'" *Id.* at 407 (quoting *Mutual Development Corp. v. Ward Fisher & Co.*, 47 A.3d 319, 323 (R.I. 2012)). "However, summary judgment should enter against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case * * *." *Correia v. Bettencourt*, 162 A.3d 630, 635 (R.I. 2017) (quoting *Newstone Development, LLC v. East Pacific, LLC*, 140 A.3d 100, 103 (R.I. 2016)).

## Analysis

### Estate Drive

The heart of this matter is whether the undeveloped land between the cul-de-sac on Estate Drive and plaintiff's property line is a public roadway. The plaintiff contends that the property in dispute is part of a contiguous public road that begins at Ten Rod Road, ends at his property line, and was properly dedicated to the town for public use.

"In order for there to be an effective dedication" of private property for public use, "two elements must exist: (1) a manifest intent by the landowner to dedicate the land in question, called an incipient dedication or offer to dedicate; and (2) an acceptance by the public either by public use or by official action to accept the same

- 6 -

on behalf of the municipality." *Robidoux v. Pelletier*, 120 R.I. 425, 433, 391 A.2d 1150, 1154 (1978).

A determination of whether an incipient dedication of a road has been made by a property owner requires a careful review of the plat upon which the designated area is depicted. Cases involving disputed ownership or access to a roadway or right of way "should be decided in accordance with our settled jurisprudence and should rise or fall by reference to the plat" itself. *Newport Realty, Inc. v. Lynch*, 878 A.2d 1021, 1042 (R.I. 2005). "Only after a finding that the lines and figures drawn on the development plan 'may be unclear as to their intended purpose,' * * * or capable of more than one meaning," should a factfinder undertake a careful scrutiny of "'all lines, figures, and letters that appear on the map as well as whatever pertinent evidence may be adduced by the litigants.'" *Id.* (quoting *Robidoux*, 120 R.I. at 434, 391 A.2d at 1155) (emphasis omitted). Significantly, "the fact-finder should examine the words or conduct *on the part of the dedicator* that reasonably tend to demonstrate his wishes" when making this conclusion, while assigning meaning to each element of the plat map. *Robidoux*, 120 R.I. at 433, 434, 391 A.2d at 1154, 1155 (emphasis added).

The plaintiff argues that constructing the unimproved portion of the roadway to plaintiff's property is all that is required for him to acquire access to his property by way of Estate Drive. It is plaintiff's contention that Map 273 does not bifurcate

Estate Drive into two sections, one portion accepted as a public roadway and the other designated as a paper street, but instead creates a single public road accepted by the town that ends at the southern border of plaintiff's property. According to plaintiff, the designation of "future roadway extention [*sic*]" on the map demonstrated the developer's intent that the undeveloped portion could be improved at a later time, not that the right of way was to exist in the future. The plaintiff relies on his position that solid lines run for the entirety of Estate Drive on Map 273,[6] including the portion designated as "future roadway extention [*sic*]," while no dashed lines appear on the map to signal designation for "future" or "temporary" use. The plaintiff is mistaken.[7]

The owner's intent at the time a plat is recorded and lots are sold controls whether or not the streets defined on the plat are public thoroughfares. *See Newport Realty, Inc.,* 878 A.2d at 1033. However, "simply placing a line or a mark on a plat or delineating a way or a street for boundary purposes is insufficient to establish conclusively the original owner's intent to offer the property for dedication." *Donnelly v. Cowsill*, 716 A.2d 742, 748 (R.I. 1998).

---

[6] The map that plaintiff relies on was labeled by plaintiff as "Recorded Map Estate Drive Detail," but does not represent the entirety of Map 273 as filed on October 9, 1996, at Drawer 6.

[7] We pause to note that the entirety of the cul-de-sac is surrounded by dashed or broken lines.

- 8 -

In the case at bar, the trial justice found that the developer intended the unimproved property between the end of the cul-de-sac on Estate Drive and plaintiff's property line to be designated a paper street. While Map 273 displays Estate Drive continuing a short distance past the cul-de-sac with solid single lines, the improved portion of Estate Drive clearly is delineated with double lines, including the cul-de-sac. The September 27, 1993 minutes of the town planning board describe a paper road to be extended to the Exeter Village property line, while the November 22, 1993 minutes indicate that expanding the road to the end of the Exeter Village subdivision should be resolved with a temporary cul-de-sac and right of way.

The record demonstrates that during the December 10, 1994 planning board meeting, Lynne Harper, the developer's civil engineer, discussed drainage structures for Estate Drive and indicated that the road ended in a temporary cul-de-sac. We are satisfied that, at the time Exeter Village and Estate Drive were established, it was intended by the town and the developer that the public roadway was to extend from Ten Rod Road to the cul-de-sac and no farther. Accordingly, we are of the opinion that the trial justice was correct in concluding that the undeveloped land south of the cul-de-sac was not intended to be a public roadway at the time Estate Drive was developed.

The second element of incipient dedication, public acceptance of the offer to dedicate one's land for public purpose, must be proven "by clear and convincing evidence." *Ucci v. Town of Coventry*, 186 A.3d 1068, 1072 (R.I. 2018) (quoting *Kilmartin v. Barbuto*, 158 A.3d 735, 747 n.20 (R.I. 2017)). This is achieved by one of two methods—"acceptance of the streets by official action or public user." *Newport Realty, Inc.*, 878 A.2d at 1033 (citing *Robidoux,* 120 R.I. at 433, 391 A.2d at 1154). The plaintiff contends that the disputed section of land between the end of the cul-de-sac and his property was accepted by the town when Estate Drive was accepted into the town road system by assent of the town council on November 5, 2001, after the Exeter Village subdivision was recorded. We disagree. Simply put, there was no road built to town specifications for the town to accept.

This Court has held that "[t]he placing of any street or street line upon the official map shall not in and of itself constitute or be deemed to constitute the opening or establishment of any street or the taking or acceptance of any land for street purposes." *Mill Realty Associates v. Zoning Board of Review of Town of Coventry*, 721 A.2d 887, 891 (R.I. 1998) (quoting G.L. 1956 § 45-23.1-1.1). The land between the cul-de-sac and plaintiff's property has never been used, maintained, or improved as a roadway and consisted entirely of wooded vegetation before plaintiff's self-help excavation. The record discloses that the developer of Exeter Village never performed any construction or clearing of land more than

- 10 -

fifteen feet beyond the cul-de-sac, and a vehicle could not travel south beyond the cul-de-sac without driving up and over the Cape Cod berms on the improved section of the roadway. Further, the town has never opened, certified, or accepted the land south of the cul-de-sac for public use, and has never maintained it. Thus, there has been no acceptance of the undeveloped land between the cul-de-sac on Estate Drive and plaintiff's property.

The plaintiff alternatively argues that the disputed land was accepted as a roadway by public user. Despite its unimproved state, plaintiff maintains that he and other members of the public have used Estate Drive to access his property since 1997. Although the number of persons using this land to access plaintiff's property may be insignificant, plaintiff argues that it is only necessary to show "that those persons who might naturally be expected to enjoy it have used it to their pleasure or advantage." *City of Spokane v. Catholic Bishop of Spokane*, 206 P.2d 277, 282 (Wash. 1949) (quoting *Loose v. Locke*, 171 P.2d 849, 852 (Wash. 1946)). The plaintiff is mistaken.

In order for a purported roadway to be declared a public thoroughfare by incipient dedication and public user, there must be a traveled roadway, whether a lane or street. Thus, we need go no further in rejecting this contention. The property in dispute has been inaccessible to vehicular access since the inception of Exeter Village and has been covered by vegetation and trees until plaintiff's unauthorized

- 11 -

excavation, which came to the town's attention in January 2019 and was stopped. Accordingly, we are of the opinion the trial justice was correct in concluding that the undeveloped property south of the cul-de-sac on Estate Drive is not a public road.

**Failure to Exhaust Administrative Remedies**

This Court has held that a plaintiff must first "exhaust administrative remedies before bringing a claim in court." *Bellevue-Ochre Point Neighborhood Association v. Preservation Society of Newport County*, 151 A.3d 1223, 1231 (R.I. 2017) (quoting *Richardson v. Rhode Island Department of Education*, 947 A.2d 253, 259 (R.I. 2008)). Futility, however, is an exception to the requirement that a plaintiff obtain an agency's final decision before seeking judicial review. *See Cullen v. Town Council of Town of Lincoln*, 850 A.2d 900, 906 (R.I. 2004). While this Court has recognized that futility is difficult to define, it has looked to the United States Court of Appeals for the First Circuit, which has "explained that futility may be established in special circumstances when a permit application is not a 'viable option' or where the permitting authority has made it 'transparently clear' that a permit application will not be granted." *Id.* (quoting *Gilbert v. City of Cambridge*, 932 F.2d 51, 61 (1st Cir. 1991)). "[T]he mere possibility, or even the probability, that the responsible agency may deny the permit should not be enough" to establish futility, "the prospect of refusal must be certain (or nearly so)." *Id.* (quoting *Gilbert*, 932 F.2d at 61).

The planning board has the "authority to act on behalf of the town in all matters of land development and subdivision regulation[.]" Town of Exeter Code of Ordinances, Appendix B, § 1.5 (December 30, 2021). Development is defined as "[t]he construction, reconstruction, conversion, structural alteration, relocation, or enlargement of any structure; any mining, excavation, landfill or land disturbance; or any change in use, or alteration or extension of the use, of land." *Id*. at § 2.2.

This Court has approved a town's requirement that a road be constructed to "town approved and established street construction standards," absent any permitted exceptions. *Mill Realty*, 721 A.2d at 892. In *Mill Realty*, the developer applied to the town zoning board seeking a "reasonable exception" to the town's established street standards when attempting to convert an unimproved paper street to a private driveway. *Id*. at 889. Although we held that the town erred in requiring the developer to construct a road to the "highest grade of permitted town roadway," the developer nonetheless was required to construct the road in accordance with town-approved standards. *Id*. at 892.

In the case at bar, plaintiff has failed to even apply for the necessary permits that would allow him to excavate the undeveloped property between the cul-de-sac and his property line. At best, the property south of the cul-de-sac is a paper street, not a public road, and thus may be certified as a public road pursuant to town standards, or abandoned, should the town elect to do so. The plaintiff applied for a

curb cut permit to access his property by way of Estate Drive, which was the incorrect path. The plaintiff was directed to apply for a road opening permit, which he declined to do. Although the plaintiff contends that it would be futile to apply for the appropriate permits because the town has issued no "driveway permits" for any lots in Exeter Village since Map 273's acceptance, including on Estate Drive, he has failed to show that refusal would be a near certainty. Unlike *Mill Realty*, where the plaintiff filed the proper permit application seeking an exception to the town's established street standards, the plaintiff in the case at bar has failed to follow the procedures for a paper street to be certified as a public road and accepted by the town. The plaintiff has thus failed to exhaust his administrative remedies.

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The papers in this case may be returned to the Superior Court.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Asa S. Davis, III v. Town of Exeter et al. |
| **Case Number** | No. 2021-81-Appeal.<br>(WC 19-228) |
| **Date Opinion Filed** | December 1, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Sarah Taft Carter |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>John O. Mancini, Esq. |
| | For Defendant:<br><br>James P. Marusak, Esq. |